UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**************************************************************

C.E., ET AL — CIVIL ACTION NO.25-1054
SECTION "P"(5)

VERSUS — THURSDAY, OCTOBER 30, 2025

ADVOCATES FOR ARTS-BASED EDUCATION CORPORATION

**************************************************************

TRANSCRIPT OF ORAL ARGUMENT
HEARD BEFORE THE HONORABLE MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR C.E.:

CHRISTOPHER F. EDMUNDS
chrisedmundslaw@gmail.com
Chris Edmunds Law OFfice
740 Dante Street
New Orleans, Louisiana 70118
(504)314-0034

FOR THE ADVOCATES FOR ARTS-BASED EDUCATION CORPORATION:

RAYMOND C. LEWIS
rlewis@deutschkerrigan.com
Deutsch Kerrigan
755 Magazine Street
New Orleans, Louisiana 70130
Telephone:(504)581-5141

CASEY B. WENDLING
cwendling@deutschkerrigan.com
Deutsch Kerrigan
755 Magazine Street
New Orleans, Louisiana 70130
Telephone:(504)581-5141

Official Court Reporter: Sammantha A. Morgan, RPR, CCR
500 Poydras Street, HB-275
New Orleans, LA 70130
(504) 589-7781
*Sammantha_Morgan@laed.uscourts.gov*

*PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY. TRANSCRIPT PRODUCED BY COMPUTER.*

**P-R-O-C-E-E-D-I-N-G-S**

**Thursday, October 30, 2025**

**M O R N I N G S E S S I O N**

**(COURT CALLED TO ORDER.)**

**THE DEPUTY CLERK:** Civil Action 25-1054, *C.E., et al versus Advocates for Arts-Based Education Corporation*.

Counsel, please make your appearances for the record.

**MR. EDMUNDS:** Good morning, Your Honor. Chris Edmunds on behalf of the plaintiffs.

**THE COURT:** Good morning.

**MR. LEWIS:** Good morning, Your Honor. Raymond Lewis and Casey Wendling on behalf of the defendants in the case.

**THE COURT:** All right. Good morning.

Mr. Edmunds, why don't you come up to the podium. I've got some questions for you.

**MR. EDMUNDS:** Okay.

**THE COURT:** Up here.

All right. So I've got a number of problems with what I've been reading in these pleadings. The first is, I will call, the rhetorical tone, okay? We do not need to be peppering the briefs with statements that -- things that -- arguments are frivolous, things that your opponent has said are false. Particularly, that they're dishonest. That's unnecessary. Okay? So tone it down.

All right. When you walk out of the courtroom, on

that table back there, there's a stack of documents. They're my civil practice guidelines. Take a copy with you. Read them and be guided by them. Okay?

When you made the observation that one of their arguments was dishonest, I have to say it struck me as a little odd, given that you continue to say in your briefs that Willow concedes that this document is relevant to the case. They did no such thing. All right. And there is a reason you used an ellipsis in that quote. What they said was, "The substance of the e-mail may be relevant." They have not conceded the relevance of anything. They've argued, repeatedly, that what the information that you are seeking in your deposition notice is irrelevant. All they said was, "The substance of the e-mail itself might be relevant to the claims in the case." They have not conceded anything. And you keep saying that they have. That's not true. All right. So you make that statement that's not true and then you accuse them of making statement -- of making arguments that are dishonest. That's the kind of stuff I really don't like to see. Okay? It doesn't advance the ball at all.

So why don't you explain to me how the identity of the person that put this e-mail -- is it an e-mail? Is that what it is?

**MR. EDMUNDS:** Yes. It's an e-mail, yes, sir.

**THE COURT:** Okay. It wasn't really clear that it was

an e-mail.

How is the identity of that person, who put that e-mail in the possession of Willow School, relevant to any of the claims or defenses in this case?

**MR. EDMUNDS:** Okay. Before I address that, Your Honor, may I address the statement you just started with?

**THE COURT:** Uh-huh (affirmative response).

**MR. EDMUNDS:** Okay. So I don't use terms like, "dishonest" lightly. I don't. You can look at -- I practice in this court regularly. You're not going to see that kind of rhetorical language from me. The reason I put that language in there is because it is what it is. It's dishonest.

**THE COURT:** What's dishonest?

**MR. EDMUNDS:** They used the word, "unilaterally scheduled" --

**THE COURT:** Yeah. That's what you did.

**MR. EDMUNDS:** I didn't. It's not true. I said, "Give me other dates."

**THE COURT:** After you, unilaterally, scheduled the deposition.

**MR. EDMUNDS:** Right, but --

**THE COURT:** "Right, but" -- let me tell you what I see, okay? I see a lawyer who sent a deposition notice without clearing the dates with the other side and then said, "If this date doesn't work we can talk about other dates in the next

couple of weeks." That's, unilaterally, setting a deposition.

**MR. EDMUNDS:** No, Judge.

**THE COURT:** That's what it is.

**MR. EDMUNDS:** I said -- I said, Judge, "Give me dates in October. Give me dates" --

**THE COURT:** After -- hold on. When did you do that? Before or after you sent the deposition notice with the dates, certain, in it?

**MR. EDMUNDS:** After.

**THE COURT:** Okay.

**MR. EDMUNDS:** And there's nothing wrong with that.

**THE COURT:** All right. I'm done having this conversation.

**MR. EDMUNDS:** Okay. Fair enough.

**THE COURT:** You unilaterally set the deposition. You've been told in the past that was wrong and I'm telling you again it's wrong. The third strike is going to be a problem, okay? That's not how to practice. Get a date from them, if they say we're not giving you a date because we don't think you should take the deposition, you file the motion to compel. You don't unilaterally set a deposition without conferring -- see that document that's sitting on the podium in laminate?

**MR. EDMUNDS:** Yes.

**THE COURT:** Okay. Read that, too. That's the Code of Professionalism that this court has adopted from the Louisiana

Bar Association.

You don't just pick dates and set them without conferring with your opposing counsel. That's how it's done.

**MR. EDMUNDS:** Judge, I understand that and it's -- the reason I took such umbrage at this is because that was the case that's been cited, is the *B.K. versus St. Catherine* case. That was my case.

**THE COURT:** I know.

**MR. EDMUNDS:** And I got set straight by Judge van Meerveld. And she says, the issue in that case was that we asked -- we set a date and then refused to move the date.

**THE COURT:** Right.

**MR. EDMUNDS:** But that's not what happened here. I set a date and immediately said, "Hey. If this date doesn't work, give us some other dates."

And they said, "There's no date whatsoever that will work."

And so the idea that they spent 11 -- 11 references in their brief accusing me of trying to inconvenience them with a scheduling concern, that's dishonest, in my opinion. I may -- you know, if I use the wrong word, I will tone it down.

**THE COURT:** I think you used a language that is too strong under the circumstances. That's what I'm saying.

**MR. EDMUNDS:** It's a pattern in this case, Judge. There was a -- they filed motion after motion, sur-replies,

extensions. They -- they asked for consent to extend a deadline. I said, "I do not consent. Please notice it for submission." What did they do? The filed the motion ex parte.

**THE COURT:** Look, that ain't before me, okay? I'm telling you --

**MR. EDMUNDS:** Fair enough.

**THE COURT:** Listen. Calm down.

**MR. EDMUNDS:** We'll move -- yeah, we'll move --

**THE COURT:** Settle down. Hold on. I'm going to decide how this hearing goes.

**MR. EDMUNDS:** Yes. Yes, sir.

**THE COURT:** I said tone it down and I mean it.

**MR. EDMUNDS:** Yes, sir.

**THE COURT:** All right. I wasn't going to make a big deal about how you scheduled the deposition until you started calling them names over it. All right. In the future, clear the dates with your opponent. If it becomes clear at that point that they're not going to give you a date because they object to giving the deposition, at all, it's on you to file a motion and come to the court and explain why I should compel it. Okay?

**MR. EDMUNDS:** Yes, sir.

**THE COURT:** Now, I want you to answer the question that I asked a minute ago. How is the identity of the individual who put this information in the possession of their

client relevant to anything?

**MR. EDMUNDS:** Okay. So this case -- I assume you've read the pleadings in this case --

**THE COURT:** Uh-huh (affirmative response).

**MR. EDMUNDS:** -- you know what the case is about. So I don't need to go over that background.

**THE COURT:** I know what the case is about.

**MR. EDMUNDS:** Okay. So this is a claim under the ADA and under Title 2 and I'm assuming Your Honor knows that when you sue a public entity, like a local or state government, under the ADA, if you want damages, you not only have to prove -- you not only have to prove liability that they violated the ADA but you have to prove an added element of deliberate indifference, right? So that's an intent standard.

One way you can prove that intent standard is through notice of a violation. Like, not only that you violated the law, but that you knew, or should have known, that what you were doing was illegal. Right?

And so in this case the Willow School, categorically, does not accept students with intellectual disabilities, even though it's a public school, even though the IDEA says there's an unqualified right to a public education, no matter how profoundly disabled my son may be. They refused to accept him. Okay. And so if Willow is coordinating with -- they have not invoked any attorney/client privilege, but to the extent that

they had someone on the inside or someone --

**THE COURT:** Inside of what?

**MR. EDMUNDS:** Inside the school. Excuse me.

And to the extent that they have somebody that they're coordinating with about disability related issues and about this issue, that puts them on notice that you are violating the law.

The other thing is, if this person has some relevant -- I don't know -- first of all, I don't know who this person is.

**THE COURT:** No, that's why you're trying to find out. I get that.

**MR. EDMUNDS:** Right. And so if they have some relevant information, it stands to reason, that they have more. But you're asking --

**THE COURT:** Their information came from you.

**MR. EDMUNDS:** No. That information did.

**THE COURT:** This is your thought processes that have been shared with this person.

**MR. EDMUNDS:** Right. So -- exactly. So I don't know what else that person -- and you're saying it's that person, but I don't know that. See, I don't know whether my e-mail got hacked. I don't know whether one of the recipients of the persons I sent it to got hacked. Right? I don't know if it was printed out and a paralegal or something picked it up. I

have no idea.

**THE COURT:** Well, you know more than they do. You know --

**MR. EDMUNDS:** That's not true.

**THE COURT:** You know who you sent it to.

**MR. EDMUNDS:** I -- well, I know who I sent it to, but there's -- there's -- I don't want to go accusing people of sending a privileged e-mail, right, when I have no idea whether any of those people did such a thing?

**THE COURT:** Okay. Why is it privileged?

**MR. EDMUNDS:** Why is it privileged?

**THE COURT:** Yes.

**MR. EDMUNDS:** Because it's sent to a discreet group of lawyers who pay an annual fee and agree, as a matter of contract, that any e-mail sent on this group are privileged and shouldn't -- and must not be shared outside of this group.

So, you know, this is also -- this is kind of -- we're doing it backwards because you're asking me why the information is relevant.

**THE COURT:** Yeah.

**MR. EDMUNDS:** But the -- that's -- in the Fifth Circuit, under the *Mcleod* case, which I cite, "The party resisting discovery has the burden to show that it's irrelevant." So I don't bear the burden, Judge, to show that this discovery is relevant. The burden is on Willow to show

that it's irrelevant and of course relevance is construed broadly and it's construed --

**THE COURT:** They wouldn't be resisting this discovery if you had not unilaterally set a deposition.

**MR. EDMUNDS:** That's incorrect, Judge, because I asked for it. Right? Look at the history of the case. First, I sent interrogatories asking for this information and they -- they resisted it.

**THE COURT:** What did you do about that?

**MR. EDMUNDS:** Well, I said I have two choices. I could file a motion to compel.

**THE COURT:** Right.

**MR. EDMUNDS:** Or I could --

**THE COURT:** Unilaterally, set a deposition.

**MR. EDMUNDS:** Unilaterally, set a deposition while I --

**THE COURT:** Which shifts the burden to them to demonstrate why it's irrelevant, as opposed to what you should have done, which is file a motion to compel when they didn't give you the information in response to written discovery to explain to me why you should get that information.

**MR. EDMUNDS:** I don't understand. Judge, I'm entitled to use other discovery devices. There's -- you know, there's nothing in the federal rules that says, if you can't get discovery through an interrogatory, then you have to file a

burden to come to court with a -- I mean, I just heard you in the first case saying, you don't want -- parties should work together to try to --

**THE COURT:** You're looking for the same information, you just took a different route --

**MR. EDMUNDS:** Yeah. I'm entitled to do that, right?

**THE COURT:** Well, you, unilaterally -- I'm going to say it again. You, unilaterally, set the deposition --

**MR. EDMUNDS:** But --

**THE COURT:** -- which set the stage for this motion and you've been told before not to do that.

**MR. EDMUNDS:** Okay.

**THE COURT:** You said you were set straight, but you haven't been.

**MR. EDMUNDS:** Judge, I vehemently disagree because this -- again, this has nothing to do with -- you know, I even said, "Do you want me to withdraw the motion?"

And they said, "No, no, no. Don't do that. Don't do that." They wanted to file this motion. They wanted to try to come into court and use inflammatory language and paint me as this person who is trying to inconvenience them and apparently it has worked. And I find that -- I find that troubling because, again, I was not trying to inconvenience anybody. I'm saying a one-hour deposition, whenever you want. We can do it on Zoom.

**THE COURT:** You want to know what member of this group, that you communicated with, violated your confidences and the confidences of the group by putting this information in the hands of Willow School.

**MR. EDMUNDS:** Judge, I have no idea whether a member of the -- I don't think a member of the group did that. It's possible. But it's also equally possible that I got hacked.

In fact, as soon as I filed this lawsuit I started getting e-mails -- really strange e-mails from Willow students that were attacking me. So it's -- it's also possible that there's a student from Willow who --

**THE COURT:** Has access to your listserv?

**MR. EDMUNDS:** No. Has access to my e-mail or someone else's e-mail or, again, it could be -- it could be that the e-mail was a bad actor in a law office that -- that forwarded the e-mail, right? I can't just go accuse people of things when there's other alternatives, right? And it's not just, like, there's two people. So I can go ask two people, right? It's more like 10 people. So it's a lot more sensitive.

**THE COURT:** How many 30(b)(6) depositions are you planning to take in this case?

**MR. EDMUNDS:** That is a -- I haven't thought about that. There's a split in circuits, Judge, because, basically, some courts take the position that you're only entitled to one 30(b)(6). Other courts say you're only entitled to take one

30(b)(6) per topic, right? And, you know -- but at a certain point you got to limit it. Because -- it doesn't make sense, right?

You know, sometimes you have topics where you may have 10 different topics and there's 10 different people that need to testify, so it doesn't make sense to have 10 different people show up for a deposition.

But after this I wouldn't -- I'd probably take one, at the most, if that.

**THE COURT:** Let me hear from the defendant.

**MR. LEWIS:** Judge, just to clarify a few things. The -- the thing that we asked to withdraw was the, unilaterally set, 30(b)(6). That's the only thing that we asked to withdraw.

As far as the relevance thing, again, I'm glad that we know a little bit more about it now. He hasn't briefed it yet, but I think what he's saying is there's some sort of breach of contract he's trying to develop with this group -- a discreet group --

**THE COURT:** I don't know what he's trying to develop. He wants to know how the information got into your hand.

**MR. LEWIS:** And we told -- it's in our briefing. We said a -- somebody came with a printed version of this, that he attached to the Rule 30(b)(6), handed it to one of the individuals in our school. It made it's way to the CEO and to

their in-house counsel. It was given to us.

When my partner, Melissa Lessell, read the first few lines, sent it to him, and said, "We don't know what this is. It could be privileged. Here it is." And then, you know, obviously, somebody printed it off and betrayed whatever confidences or confidentiality they have in that group.

That has nothing to do with our case. That has nothing to do with anything involving the IDEA claims, the ADA or the LHRA claims.

The only -- as you correctly mentioned the ellipses, the only thing we've ever said is that when he posted this to this discreet group of, apparently contractually bound individuals, it relates to our case, but it has nothing to do with the evidence or the claims against Willow. It's his -- it's his publicly disclosed plans that he was going to use in the future, almost all of which he has done. And then he destroyed any privilege, whatsoever, by disseminating it multiple times.

So, again, I understand -- in fact, I sympathize and I understand his concern here, but it doesn't involve Willow. We shouldn't be made to put up a corporate representative for him to grill over who gave this, you know -- and then it get looped into some breach of contract against this person or defamation or whatever he's going to do. And so it has nothing to do with us. If he has a problem -- apparently, he has a

binding contract and he can sue that group and he can figure out who did it. But what concerns me is the -- the breadth of what he's now talking about, about e-mails being hacked and, you know, our students hacking him or -- we have access to his e-mails, which is all absurd.

Somebody handed us a printed version of this. We gave it back to him, and he's furious. And I don't know that I disagree with him on being furious, you know. Personally, I don't post stuff like that on listservs for this very reason. Because I don't necessarily believe, even with a contract, that it can give you the kind of confidence you should have in privilege and work product for this very fact, that somebody, he doesn't know who, disclosed it. And, again, he has a problem with that. I understand that. He has a problem with that person. I understand that, but it doesn't involve us and I don't think he should be able to use the powers of discovery and Your Honor to force us to put somebody up, to talk about some person who we don't even know -- right now, I don't know who this person is. Because when we found it all, we stopped, and we said, "Here it is." And then this process began.

So it is entirely irrelevant. While the subject matter and the background relate to his plans, who that person is, his problem with that person, what he may do to that person --

**THE COURT:** So Mr. Edmunds' argument is that, under

Fifth Circuit precedent, when you move for a protective order, on the grounds that the information that they seek is irrelevant, that's not enough for the Court to grant a protective order because the burden of obtaining the protective order is on the movant.

**MR. LEWIS:** And, Your Honor, I think you rightly pointed out that I believe that was a strategic decision he made to shift --

**THE COURT:** Oh, I believe it was, too.

**MR. LEWIS:** Yes. So --

**THE COURT:** But that doesn't change the fact that that's the posture that we're in.

**MR. LEWIS:** But I would argue, Your Honor, that we have satisfied our burden to prove that. Every -- there's not a single piece of this two-page e-mail, at 48-9 in the record, there's not a single piece of this that is going to lead to relevant information pertaining to his claims against Willow. It may seek, are there relevant -- what we say, fishing expedition -- and I'll note on the waiver issue, the word "fishing expedition" is actually in the case he cited, which is why we picked it up in our reply.

We haven't waived any of these issues, by the way, Your Honor, from the filing yesterday.

But we have established that it has nothing to do with the IDEA, the ADA, the LHRA claims that are targeting

Willow. It has solely to do with his personal decision to disclose something to a third party and an unknown third party printed out a copy and gave it to Willow.

**THE COURT:** I mean, I think I agree with all of that.

So, Mr. Edmunds, come and explain to me why I'm wrong.

**MR. EDMUNDS:** Yes, Judge. You hit on the right topic. You know, I was going to hit on this before, but the text of Rule 26(c) has four discreet categories for issuing a protective order. Annoyance, they don't rely on that. Embarrassment, they don't rely on that. Oppression, they don't rely on that. Undo burden or expense, there's really no way to argue that this is going to be an undue expense. Undue burden, is the only thing that I think they sort of argue.

**THE COURT:** Well, the problem -- here's the problem. It's not just about relevance. It's about proportionality and burden because you're asking them to present a witness and convene a deposition for the sole purpose of obtaining information that is not relevant to the claims and defenses in the case. That's the problem. That's the problem as I see it. This is a full-blown discovery exercise aimed at obtaining information that is not relevant to the claims and defenses in the case. The identity of a person who shared an e-mail, that's not relevant and your argument is, doesn't matter if it's relevant. I get to do it anyway because it's their burden

to get a protective order. And what I'm saying is, it goes beyond that. It goes to, you have to convene a deposition with a court reporter and a person and they have to be prepared. All to do, what? Testify about something that is not relevant. That's the problem I'm having.

**MR. EDMUNDS:** Fair enough, Judge.

So, I mean, if -- but to take your point. If I were to have -- rather than -- I was trying to do this to be narrowly tailored, rather than do a full blown deposition, but if I had come -- if I -- instead of issuing a limited 30(b)(6), I had just issued a notice of deposition of the CEO, right, who, Mr. Lewis said, received that printed out document. I could have done a full deposition of every issue in the case and she would not have -- if -- you know, if they -- if I asked about this e-mail, that the CEO -- you know, their lawyer could say, "Well, that's irrelevant." But she'd still have to answer the question. It may not be -- maybe later down the line it won't be admissible at trial, but she'd still -- in other words, I feel like I'm being punished for trying to do the minimal amount of burden.

I tried to do it through written discovery. They objected. I said, okay, let's do --

**THE COURT:** I'm here to tell you I don't know what would happen if we were here for a motion to compel --

**MR. EDMUNDS:** Right.

**THE COURT:** -- responses to written discovery. We could be having a different conversation, but we're not. Because you didn't file --

**MR. EDMUNDS:** The motion to compel -- but, Judge, it's important to note that *Mcleod* was a motion to compel. The burden is the same under a motion to compel. It's always the party resisting discovery. It doesn't matter who files the motion. If the motion to compel -- if I file a motion to compel on this, they would still have the burden to prove irrelevance. I would not have the burden to prove relevance. It's the same. The standard is the same. The posture is different.

**THE COURT:** The information you're seeking --

**MR. EDMUNDS:** But it is relevant.

**THE COURT:** -- is not relevant.

**MR. EDMUNDS:** It is relevant. And, Judge, that's why I tried to explain. Because, first of all, we don't -- it's -- it's premature to say whether or not it is or isn't relevant because we don't know who the person is. But if it is somebody who is working hand in glove with Willow in --

**THE COURT:** From your group.

**MR. EDMUNDS:** -- in a capacity on disability rights --

**THE COURT:** Hold on. From your closed group.

**MR. EDMUNDS:** Right. That would be relevant to deliver indifference. That would be relevant to the standard,

under Fifth Circuit case law, to prove entitlement to damages against a Title 2 entity. Because it would prove there's notice of a violation. You're working with a disability rights lawyer. Surely you know that you can't exclude intellectually disabled students and --

**THE COURT:** That's a bridge too far. Okay.

You made the argument in your brief that you -- this is how your argument went.

**MR. EDMUNDS:** Yes.

**THE COURT:** They've conceded the substance in the e-mail is relevant, which I don't think they have, but this is the argument you made. They conceded the relevance of the underlying information. This person has knowledge of that information. Therefore, a person with knowledge of relevant information should be identified.

**MR. EDMUNDS:** That is how -- that is the standard under Fifth Circuit case law under the cases we cited, yes.

**THE COURT:** That only talks about one person with knowledge and relevant information. The person who gave that information to the CEO of the school. It doesn't consider all of the other people that you shared that information with. Are they not people with information -- I mean, with -- in possession of relevant information? Every single one that received that e-mail from you.

**MR. EDMUNDS:** Yes, I suppose I could go subpoena -- I

could go issue, you know, a dozen subpoenas. But the other thing, Judge, is that --

**THE COURT:** No. My question is a little bit different.

**MR. EDMUNDS:** Okay.

**THE COURT:** If your position is that person should be identified because they possess relevant information, which is the information you gave them from your head --

**MR. EDMUNDS:** Right.

**THE COURT:** -- doesn't everybody else who received that same information fit that -- fit that definition and should they not also be identified?

**MR. EDMUNDS:** Should they not also be identified?

**THE COURT:** By you.

**MR. EDMUNDS:** By me?

**THE COURT:** As a person with knowledge of relevant information in the case.

**MR. EDMUNDS:** Sure. Why not?

**THE COURT:** Why not? I don't think that they're going to appreciate that very much.

**MR. EDMUNDS:** Yeah. There might be a proportionality -- on relevance, yes, there might be a proportionality issue. But on relevance, sure. Yeah. I mean, I take your point perfectly. You're saying, if standing alone, receiving this e-mail means you have relevant information, then

they could issue a discovery request on me saying, "Tell us every single person who received that e-mail." And I would have to do that under relevance. It would be relevant. Right. It may not be proportional. There may be other concerns with privilege, but --

**THE COURT:** I don't agree with you. Okay?

**MR. EDMUNDS:** Fair enough.

**THE COURT:** Well, that's a good thing for you because when they send their discovery requests, I'm not going to give them the information.

My point is, I think that whole set of circumstances is absurd. Okay. You're communicating with a group of lawyers, as you've described it, of like-minded lawyers. This happens all the time. These groups exist across the board in every kind of practice. If your argument was right, they sure wouldn't exist for long because every lawyer whoever sent any information, sought any advise, talked about their case, talked about strategy, did any of that, within the confines of a group like that, would have to identify everybody in the group, every time they had a discovery request. That can't possibly be right.

**MR. EDMUNDS:** And, Judge, I think this is -- this gets to the motion that I filed yesterday on waiver. We're getting so far off field here because there was only four arguments in support of the protective order and they've abandoned most of

them.

**THE COURT:** Listen.

**MR. EDMUNDS:** Yeah. Fair enough.

**THE COURT:** The reply memo is a response to your opposition memo. That's what reply memos do.

**MR. EDMUNDS:** Right. But I didn't say anything about -- there's nothing about a personal mission or motivation --

**THE COURT:** Again, that's rhetoric. Okay. That's -- it's argument.

**MR. EDMUNDS:** Right. And new arguments in a reply brief, you have to give me the opportunity to file a surreply. So if Your Honor wants to --

**THE COURT:** File a motion for leave to file a surreply and here we are having an argument.

**MR. EDMUNDS:** Judge, I filed a motion to disregard the new arguments filed in the surreply. In the Fifth Circuit --

**THE COURT:** When is that motion set for submission?

**MR. EDMUNDS:** November 19th.

**THE COURT:** A lot of good that's going to do us since we've been here for 15 minutes.

**MR. EDMUNDS:** Well, Your Honor, I -- what I'm saying is that if you want to rely on this -- on these new arguments made in their reply brief about my supposed personal mission and motives, there's only two --

**THE COURT:** Don't worry. I'm not.

**MR. EDMUNDS:** Okay.

**THE COURT:** I'm relying on the fact that you're seeking irrelevant information in a deposition that's noticed for that sole purpose.

**MR. EDMUNDS:** Okay.

**THE COURT:** Okay. I don't even know what to do about the idea that you refer to that information as attorney/client privilege information in the notice and then you attach the communication --

**MR. EDMUNDS:** Yeah. I'm waiving -- I'm waiving the privilege because, at that point, the privilege is not at issue in this case, right, because I've waived the privilege. Because, as Mr. Lewis said --

**THE COURT:** Yeah.

**MR. EDMUNDS:** -- everything has already happened, so it's a moot point.

**THE COURT:** Well --

**MR. EDMUNDS:** But -- but --

**THE COURT:** Hold on.

**MR. EDMUNDS:** Yes, sir.

**THE COURT:** The privilege wasn't waived when the information made it to the Willow School because those lawyers did what they're supposed to do. As soon as they saw the information and they suspected --

**MR. EDMUNDS:** Correct. No, no. Yeah. Absolutely. 100 percent.

**THE COURT:** Okay.

**MR. EDMUNDS:** 100 percent. And to be perfectly clear on the record, Ms. Lessell did exactly what a good lawyer should do. She stopped reading. She destroyed the document. And I've never claimed otherwise. Right.

And so my issue, in terms of the -- you know, privilege is not at issue here and I'm not accusing the lawyers of -- of any ethical misconduct in that regard.

**THE COURT:** No. I don't think that you are. My point is, to say that you waived the privilege because the cat was already out of the bag is not necessary. Was not --

**MR. EDMUNDS:** No, I didn't -- I waived -- I affirmatively waived the privilege.

**THE COURT:** I know you did.

**MR. EDMUNDS:** Yes. I affirm -- I came in -- even after it wasn't waived, right, because they returned it, but then after in -- in my -- as you noticed -- as you explained in my notice of deposition, I waived the privilege. Absolutely. I don't disagree with that.

**THE COURT:** All right. I'm going to get y'all an order. I'm likely to grant the motion for a protective order. I do not think this is a deposition that should take place. Okay. As I said, you're talking about convening a deposition

with everything that goes around that, the court reporter and preparation and everything else, all aimed at getting to, what I believe is, irrelevant information. So that's my problem. Okay?

I'm going to go back and read the briefs again. I'm going to rule on the motion. I will probably deny it as moot, the motion that you just filed, because I'm not considering any of that stuff anyway. To me, it's just rhetoric and argument. Okay. When I issue my ruling, you will see what the ruling is based on and, you know, we'll go from there.

Mr. Lewis has something else he wants to say.

**MR. LEWIS:** Judge, can I address one specific issue? This is kind of a new nuance thing that has come up with what my colleague is saying.

So he's tying our -- someone dropping this printed piece of paper off to our office to a deliberate indifference under the statutes at issue in the case. And I just want to make sure it's very clear that all of the conduct that they say were in violation of those statutes occurred before somebody dropped this piece of paper off on us. And also, to make it very clear, nobody, that we know of, within Willow's general counsel or outside counsel or its executive staff, are members of some listserv that's spying on the group.

**THE COURT:** Look, if I was Mr. Edmunds I'd want to know what happened, too.

**MR. LEWIS:** No, I -- I -- look, this is -- the hard part for me is that I agree with him that whoever he trusted not to exchange this, has breached that trust and possibly a contract. But it's got nothing to do with Willow and putting us up for a deposition. And again, it's -- it is -- it is an undo burden. It -- I will say this, I think it's -- you know, while we're talking about Fifth Circuit precedent, there's nothing in the case law coming anywhere close to something like this. And so -- and I agree with you. I think if --

**THE COURT:** No, I mean, I haven't seen --

**MR. LEWIS:** -- the listservs are done if what happens, happens. But, you know, I do want to make sure that there is no -- like, we're not spying or hacking on anybody for, you know, information that gives us deliberate indifference. That's a farce.

**THE COURT:** You wanted to say something?

**MR. EDMUNDS:** Yes, Judge. I know you said you were going to deny us as moot, my motion, but I would ask that, in the alternative, you simply grant me leave today to file a surreply before you issue your ruling, so that I can address all of the new things, including what Mr. Lewis just said here at the podium today.

**MR. LEWIS:** Judge, none of this is new.

**MR. EDMUNDS:** No. We just talked about deliberate indifference and --

**THE COURT:** You did.
**MR. LEWIS:** You did.
**MR. EDMUNDS:** I did, right, because --
**THE COURT:** You did that.
**MR. EDMUNDS:** But, Judge --
**THE COURT:** Hold on. Stop. I asked you why this was relevant and that was your response to me, okay --
**MR. EDMUNDS:** Right.
**THE COURT:** -- in hearing. That's why we have hearings. You can answer questions that the judge has.
**MR. EDMUNDS:** Fair enough. No, but --
**THE COURT:** You don't then get to file a surreply --
**MR. EDMUNDS:** No, no, no. But --
**THE COURT:** -- to back up your argument.
**MR. EDMUNDS:** Right. But more -- more to the point of all the stuff about spying and moles and all this stuff, none of that was in the original brief. I've had to -- I've had to address this on the fly, orally, without any opportunity to file a written response.
**THE COURT:** This all came from you.
**MR. EDMUNDS:** Yes. Understood, understood.
**THE COURT:** Hacking and spying and all of this other stuff, this came from you, just now, at the podium. When I -- all I asked was a simple question: How is the identity of the person who gave this e-mail to Willow School relevant and you

came forth with all of this stuff.

**MR. EDMUNDS:** Well -- because, Judge, you were -- you're -- you were not satisfied with my initial answer, right? The initial answer I gave you, you articulated better than I could, which is that, you know, the person -- whoever had it, had knowledge of a relevant document which they say may be relevant, I -- either way, whether it may be or is relevant --

**THE COURT:** I don't really think you want your strategy discussions to a closed group to be considered relevant to this case. I think that's a very dangerous place for you to be. Okay? You've waived the privilege.

**MR. EDMUNDS:** Right.

**THE COURT:** You've waived the privilege, okay?

**MR. EDMUNDS:** Yeah.

**THE COURT:** To what extent, I don't know. That's not before me. But you have -- it may just be to that document. It may be to everything related to the thoughts and strategies that you shared with this group, you may have waived. You really don't want me finding that your thought processes, as communicated in an e-mail to a closed group of like-minded lawyers, is relevant to the claims and defenses in the case because it opens up a real problem potentially.

**MR. EDMUNDS:** Yeah. Well, the other issue, other than relevance, Judge, is that the courts had an inherent authority to police potential -- any sort of interference in a case,

whether that be ethical misconduct or some other type of thing, right? And so that's the issue that I was -- if Your Honor was going to rely on this -- and you keep saying you're not going to rely on it, but it does sound like, from what I'm hearing from Your Honor, that there is going to be -- it is going to be at least colored by that thought process about listservs.

**THE COURT:** What thought process?

**MR. EDMUNDS:** Well, about relevance. In other words, what -- how is this issue relevant? They haven't proved how it is irrelevant, which is their burden, right? And so --

**THE COURT:** I think they have.

**MR. EDMUNDS:** Okay. I've already, you know --

**THE COURT:** I've asked you a number of times to explain why it is relevant. What I'm saying is, I'm not buying your argument.

**MR. EDMUNDS:** Understood.

**THE COURT:** I think that they have amply demonstrated that the identity of this person, which is all you're seeking --

**MR. EDMUNDS:** That's not all I'm seeking. I'm trying to find out how they got the document because again --

**THE COURT:** I think they told you that already.

**MR. EDMUNDS:** No, they don't know. All they know, from all they've told you today, is that someone delivered a piece of paper to the CEO. Who delivered that and did someone

deliver it to that person?

**THE COURT:** Who is the identity of the person, that's what you were trying to find out.

**MR. EDMUNDS:** Right. But, I mean, that may not tell me anything, right? I mean, because it could have been -- somebody got it from someone who got it --

**THE COURT:** It will tell you a lot -- it will get you very close to where you want to be.

**MR. EDMUNDS:** Right.

**THE COURT:** That's what you're looking for.

**MR. EDMUNDS:** Right. And I think that's relevant. This idea that --

**THE COURT:** I know you think it's relevant.

**MR. EDMUNDS:** If that person, right -- he's saying all this stuff happened before they received that e-mail. But if that person, as I said, has been working hand in glove during the time of the wrong -- alleged wrongdoing, then it's relevant.

**THE COURT:** No. I don't see how.

**MR. EDMUNDS:** Because under the deliberate indifferent standard you have to have notice of a violation. Right. So if it's an innocent violation, you violated the law, but you didn't --

**THE COURT:** I know that.

**MR. EDMUNDS:** Yes. So if there's someone -- let's say

this is a disability rights specialist who is, as I said, working hand in glove with Willow during the time --

**THE COURT:** With both sides, apparently.

**MR. EDMUNDS:** Apparently. Then that would be highly relevant to the state of mind of Willow.

**THE COURT:** I disagree.

**MR. EDMUNDS:** Okay. I respect your disagreement, Judge.

**THE COURT:** Look, I'm with Mr. Lewis. Okay. I understand your frustration and I understand why you want this information. I get it. I'm trying to stay between the lines here with the rules, okay, and what this case is really about. So I don't begrudge you your efforts to get to the bottom of what happened. I really don't and that's why -- you know, that's why we've been here for a half an hour arguing about it. All right.

**MR. EDMUNDS:** Fair enough. Thanks, Judge.

**THE COURT:** Thank you.

**MR. LEWIS:** Thank you, Your Honor.

(Whereupon this concludes the proceedings.)

**CERTIFICATE**

I, Sammantha A. Morgan, RPR, CCR, Official Court Reporter for the United States District Court, Eastern District of

Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

*/s/Sammantha A. Morgan, RPR, CCR*
Sammantha A. Morgan, RPR, CCR
Official Court Reporter